UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ALEXANDER HAIGH,

                Plaintiff,

-against-

GRAYSONS SOLICITORS LLP; BANNER
JONES SOLICITORS,

                Defendants.

25-CV-8313 (LLS)

ORDER OF DISMISSAL

LOUIS L. STANTON, United States District Judge:

Plaintiff, who is appearing *pro se*, filed this action invoking the court's diversity of citizenship subject matter jurisdiction. By Order dated December 17, 2025, the Court granted Plaintiff's request to proceed *in forma pauperis* ("IFP"), that is, without prepayment of fees. For the reasons set forth in this Order, the Court dismisses the action without prejudice for lack of subject matter jurisdiction.

## STANDARD OF REVIEW

The Court must dismiss an IFP complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint when the Court lacks subject matter jurisdiction of the claims raised. *See* Fed. R. Civ. P. 12(h)(3).

## BACKGROUND

On October 29, 2025, Plaintiff Alexander Haigh, a citizen of the United Kingdom, filed an amended complaint in this action, which is the operative pleading. (ECF 8.) Plaintiff alleges that "he is a long-standing entrepreneur who has conducted the majority of his commercial

activity through the United States since 2011. This activity has included the registration of patents, trademarks, and U.S. copyright certificates for his software, together with active acquisition and investment discussions." (*Id.* at 7.)

Defendants are two United Kingdom law firms, Graysons Solicitors LLP and Banner Jones Solicitors. Plaintiff accuses Defendants of engaging in "egregious acts" that have "foreseeably and actually caused [him] commercial and reputational injury in New York." (*Id.* at 1, 4.)

> Defendants' actions contributed to the collapse of Plaintiff's U.K. technology company Typerium, valued at approximately $10 million by Insight Partners in New York, and the loss of associated U.S.-facing trademarks (notably TYPE®, valued at approximately $5 million), acquisition opportunities, and the disruption of two other businesses and additional trademarks and commercial intellectual property held by Mr. Haigh. Prior to the negligence of the solicitors, Mr. Haigh was in active discussions with Insight Partners and a Web3 private equity firm, Emoote, regarding potential investment opportunities. Emoote's minimum investment commitment was $20 million. Emoote personally stated they were so impressed with Typerium that they believed the company had been established for 20 years due to its exceptional creative efforts and proprietary technology. Typerium operates in the creative software and design-publishing sector, where the market leader has been valued at approximately $42 billion, as reported by TechFundingNews.com ("Canva hits $42B valuation"). Plaintiff spent more than seven years developing Typerium's proprietary technology to compete in this high-growth market, and Insight's valuation of $10 million reflected both that work and the scale of U.S. commercial potential.

(*Id.* at 2.)

Plaintiff further claims that Defendants have "impacted" his "professionalism and business relations," and caused him "emotional and psychological pressure," which led to him suffering a "breakdown" in 2023, (*Id.* at 4.) He asserts that because of Defendants' conduct, he was compelled, "under sustained legal attack and the threat of asset seizure in the United Kingdom, to relocate temporarily to Spain," which "compounded both the emotional harm (including Plaintiff's inability to cope with separation from his young daughter) and the

2

commercial harm (including interruption of U.S. platform development and investor communications), thereby aggravating the New York-based losses." (*Id.* at 7.)

According to Plaintiff, Defendants have acted "on behalf of Plaintiff's daughter's mother," and that his child's maternal aunt "repeatedly monitored Plaintiff's social media activity," which

> caused [him] significant psychological distress and reinforced the need for protective measures. Plaintiff submitted an application for a Non-Molestation Order (Without Notice) to Derby Family Court [in the United Kingdom]. Despite assurances that the matter would be processed expeditiously, nearly four months later the application remains unaddressed. This prolonged inaction underscores further procedural unfairness and has left Plaintiff without protective measures during a sustained period of harassment."

(*Id.* at 4-6.) Plaintiff states that some or all of these issues "were specifically discussed during [unspecified] trial proceedings." (*Id.* at 5.)

Plaintiff asserts state-law claims of defamation, "intentional interference with prospective economic advantage," intentional infliction of emotional distress, "professional negligence/breach of fiduciary duty," "conversion/misuse of client data," for which he seeks $11 million in damages. (*Id.* at 26-30.) Plaintiff also asks that the Court "seal" the parts of his original complaint, ECF 1, that reference his "medical history." (*Id.* at 31.) Plaintiff also filed a motion to seal a separate "exhibit" that he claims contains "proprietary" information, (ECF 6) and a motion for sanctions. (ECF 38.)

## DISCUSSION

### A.    Subject matter jurisdiction

The subject matter jurisdiction of the federal district courts is limited and is set forth generally in 28 U.S.C. §§ 1331 and 1332. Under these statutes, federal jurisdiction is available only when a "federal question" is presented or, when claims under state law are asserted under the court diversity jurisdiction, when the plaintiff and the defendants are citizens of different

3

states and the amount in controversy exceeds the sum or value of $75,000. "'[I]t is common ground that in our federal system of limited jurisdiction any party or the court *sua sponte*, at any stage of the proceedings, may raise the question of whether the court has subject matter jurisdiction.'" *United Food & Com. Workers Union, Local 919, AFL-CIO v. CenterMark Prop. Meriden Square, Inc.*, 30 F.3d 298, 301 (2d Cir. 1994) (quoting *Manway Constr. Co., Inc. v. Hous. Auth. of the City of Hartford*, 711 F.2d 501, 503 (2d Cir. 1983)); *see* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999) ("[S]ubject-matter delineations must be policed by the courts on their own initiative . . . .").

### 1.    Federal question jurisdiction

To invoke federal question jurisdiction, a plaintiff's claims must arise "under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. A case arises under federal law if the complaint "establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Bay Shore Union Free Sch. Dist. v. Kain*, 485 F.3d 730, 734-35 (2d Cir. 2007) (quoting *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 690 (2006)). Mere invocation of federal question jurisdiction, without any facts demonstrating a federal law claim, does not create federal question jurisdiction. *See Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1188-89 (2d Cir. 1996). Plaintiff does not invoke the Court's federal question jurisdiction, and the allegations in his complaint do not suggest any federal claims.

### B.    Diversity of citizenship jurisdiction

Plaintiff also does not allege facts demonstrating that the Court has diversity jurisdiction of this action. To establish jurisdiction under 28 U.S.C. § 1332, a plaintiff must allege that the plaintiff and the defendant are citizens of different states, *Wis. Dep't of Corr. v. Schacht*, 524

U.S. 381, 388 (1998), and must also allege, to a "reasonable probability," that the claim is in excess of the sum or value of $75,000.00, the statutory jurisdictional amount. *See* 28 U.S.C. § 1332(a); *Colavito v. N.Y. Organ Donor Network, Inc.*, 438 F.3d 214, 221 (2d Cir. 2006) (citation and internal quotation marks omitted).

Generally, "[a]n individual's citizenship, within the meaning of the diversity statute, is determined by his domicile[.]" *Van Buskirk v. United Grp. of Cos., Inc.*, 935 F.3d 49, 53 (2d Cir. 2019) (internal quotation marks omitted). The statute provides for diversity jurisdiction of an action for claims between citizens of different American States in which subjects or citizens of a foreign state are additional parties, Section 1332(a)(3). Diversity jurisdiction does not exist where there are foreign nationals on both sides of the litigation. *Franceskin v. Credit Suisse*, 214 F.3d 253, 258 (2d Cir. 2000) (holding that "even if a corporation organized under the laws of a foreign nation maintains its principal place of business in a State, and is considered a citizen of that State, diversity i[s] nonetheless defeated if another alien party is present on the other side of the litigation.") (citing *Int'l Shipping Co. v. Hydra Offshore, Inc.*, 875 F.2d 388, 391 (2d Cir. 1989)); *Corporacion Venezolana de Fomento v. Vintero Sales Corp.*, 629 F.2d 786, 790 (2d Cir. 1980) ("The fact that alien parties were present on both sides would destroy complete diversity[.]"); *Moreno-Godoy v. Gallet Dreyer & Berkey, LLP*, No. 14-CV-7082 (PAE), 2015 WL 5737565, at *7 (S.D.N.Y. Sept. 30, 2015) (When a party is an alien for diversity purposes, "diversity i[s] . . . defeated if another alien party is present on the other side of the litigation."). Here, because Plaintiff asserts that both he and Defendants are alien parties, the Court cannot exercise diversity of citizenship jurisdiction of this action.

Because Plaintiff has failed to allege facts showing that the Court has either federal question or diversity of citizenship jurisdiction of this matter, the Court dismisses this action without prejudice for lack of subject matter jurisdiction.[1] *See* Fed. R. Civ. P. 12(h)(3).

**C.      Motions**

The Court grants Plaintiff's requests to seal to the extent that the Court has directed the Clerk of Court to restrict access to attachments to the original complaint and the motion to seal. (ECF 1-1, 1-2, 1-3, 6-1.) The motion for sanctions is denied without prejudice.

**D.      Leave to amend**

District courts generally grant a *pro se* plaintiff an opportunity to amend a complaint to cure its defects, but leave to amend is not required where it would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123–24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Because the defects in Plaintiff's complaint cannot be cured with an amendment, the Court declines to grant Plaintiff leave to amend his complaint.

### CONCLUSION

The Court dismisses this action without prejudice for lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3). The Court has adjudicated the motions as set forth in this Order, and directs the Clerk of Court to terminate them. (ECF 1, 6.)

The Court certifies, under 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith and, therefore, IFP status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

---

[1] Because subject matter jurisdiction is lacking, the Court declines to address whether venue is proper in this district.

Dated:    December 18, 2025
          New York, New York

                                        *Louis L. Stanton*

                                        Louis L. Stanton
                                        U.S.D.J.